UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES DANIEL SUGDEN, | ) |
| | ) CASE NO. C10-735-TSZ-MAT |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| A. NEIL CLARK, Field Office Director, U.S. | ) |
| Immigration and Customs Enforcement, | ) |
| | ) |
| Respondent. | ) |
| | ) |

I. INTRODUCTION AND SUMMARY CONCLUSION

Charles Daniel Sugden ("petitioner") has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, which challenges his detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Dkt. 7.) He requests that this Court "[o]rder the Petitioner to be released on supervised release pending all finality or that the court orders the Agency to hold a bond hearing where individual factors are considered that can allow for the release of the Petitioner pending the conclusion of his legal matters . . . ." *Id*. at 2. Respondent has filed a motion to dismiss, asserting that "Petitioner is lawfully detained pursuant to INA § 241(a)(1)(C), [8 U.S.C. § 1231(a)(1)(C)], which allows for detention at the

REPORT AND RECOMMENDATION
PAGE -1

discretion of the Attorney General during and after the removal period, because Petitioner refuses to make timely application in good faith for travel documents necessary to effectuate his removal to Ivory Coast and has acted to prevent his own removal." (Dkt. 13 at 4.)

For the reasons set forth below, the Court recommends that respondent's motion to dismiss be GRANTED, and that this matter be DISMISSED with prejudice.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On March 9, 2005, petitioner entered the United States by presenting a fraudulent British passport when disembarking from a cruise ship originating in Mexico. (Administrative Record ("AR") L3, R51.) Petitioner remained in the Unites States illegally. (AR R51.).

On June 23, 2007, petitioner attempted to enter Canada using a California driver's license and a Missouri birth certificate in the name of Brandon Lewis Fletcher. (AR L237-44, L195-96.) During a secondary immigration inspection, petitioner admitted the driver's license and birth certificate where fake, and claimed that his name was Charles Daniel Sugden and that he was a British citizen and was born in the Ivory Coast. *Id*. Petitioner was subsequently arrested and ordered deported from Canada. *Id*. On February 4, 2008, petitioner was returned to the United States by the Canadian Border Services Agency under a third country agreement. (AR R52, R336, R112.)

On June 16, 2008, petitioner was served with a Notice to Appear, placing him removal proceedings and charging him as subject to removal under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), as an immigrant who is not in possession of a valid immigrant visa, passport, or other suitable travel document. (AR L38-40.) On November 25, 2008, an Immigration Judge ("IJ") denied petitioner's applications for asylum, withholding of

removal, and for relief under the Convention Against Torture, and ordered him removed to the Ivory Coast.  (AR L252.)   The parties waived appeal of the IJ's decision.  *Id*.  Accordingly, petitioner's order of removal became administratively final on that date.   INA §101(47)(B).

On March 3, 2009, ICE issued a Decision to Continue Detention, informing petitioner that he would remain in ICE custody pending his removal from the United States.  (AR R322-23.)   The decision explained:

> Pursuant to [INA § 241(a)(1)(C)], you are required to make timely and good faith efforts to obtain travel or other documents necessary for your removal from the United States.  If you fail to make these efforts, Section 241(a)(1)(C) allows for the extension of the removal period.
>
> On June 23, 2007, you attempted to enter Canada by presenting a California driver's license and Missouri birth certificate in the name of FLETCHER, Brandon Lewis. You later admitted the documents were fraudulent and not your true identification after you learned that FLETCHER has a criminal record. Then you claimed your name was SUDGEN, Charles Daniel, a British citizen born in the Ivory Coast, as it appeared on a United Kingdom passport found on a traveling companion. The British Consulate General in Vancouver examined the passport and determined that [it] had been tampered with and the photographic details did not match those held at their central records.
>
> On February 4, 2008, you entered the United States after being arrested and deported from Canada for misrepresentation, an offense under the Immigration and Refugee Protection Act. The Customs and Border Protection conducted an interview and you claimed your name was SUDGEN, Charles Daniel, born on 3/25/1971 in Sierra Leone. Since your arrival at the Northwest Detention Center you have been interviewed by an Asylum Officer on two occasions and ICE on three occasions and have submitted an Application for Asylum and for Withholding of Removal (I-589). You have been inconsistent with your name and country of citizenship. The last name you provided to ICE, MCNAIR, Byron, was found to be fraudulent by your own admission to the Canadian Officials.
>
> Each name you have provided has been proven to be of someone else's identity. ICE is unable to determine who you are, what country were you born in and what country are you a citizen of.   You have failed to comply with your obligation and are acting to prevent you removal from the United States.   The removal period is therefore extended in your case.

> . . .
>
> Your next file custody review will be ninety (90) days from the date you begin complying with your obligation to assist in obtaining a travel document.

(AR R322.)

On April 16, 2010, petitioner submitted information to ICE claiming that his true name is Benade Augbouille and that he is a native and citizen of the Ivory Coast. (AR 433-36, 449-51.) ICE is currently investigating petitioner's new identity claims. (AR R447-48, 455.)

## III. DISCUSSION

Section 241(a)(1)(A) of the INA states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A). During the removal period, continued detention is required. INA § 241(a)(2), 8 U.S.C. § 1231(a)(2)("During the removal period, the Attorney General shall detain the alien."). Under Section 241(a)(6), the Attorney General may detain an alien beyond the 90-day removal period. INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 2505, 150 L. Ed. 2d 653 (2001), the Supreme Court considered whether the post-removal-period statute, INA § 241(a)(6), authorizes the government "to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas,* 533 U.S. at 682. The petitioners in *Zadvydas* could not be removed because no country would accept them. Thus, removal was "no longer practically attainable," and the period of detention at issue was "indefinite" and "potentially permanent." *Id.* at 690-91. The Supreme Court held

that INA § 241(a)(6), which permits detention of removable aliens beyond the 90-day removal period, does not permit "indefinite detention." *Id.* at 689-697. The Court explained that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court further held that detention remains presumptively valid for a period of six months. *Id.* at 701. After this six-month period, an alien is eligible for conditional release upon demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the Government to respond with sufficient evidence to rebut that showing. *Id*. at 701.

Notwithstanding *Zadvydas*, under INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), "the removal period shall be extended . . . and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure . . . ." In *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003), the Ninth Circuit held that "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." The Ninth Circuit explained that the concerns of indefinite detention underlying the Supreme Court's decision in *Zadvydas* do not exist when the alien "has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the [Government]." *Pelich*, 329 F.3d at 1060 (citation omitted)*; see also Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)(holding that INA § 241(a)(1)(C) authorizes continued detention of a removable alien as long as the alien fails to cooperate fully and honestly with officials to obtain travel documents). The Court concluded that "*Zadvydas*

REPORT AND RECOMMENDATION
PAGE -5

does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Id.*

In the present case, the evidence clearly establishes that petitioner has failed to cooperate with his removal. Petitioner's misrepresentations regarding his identity and citizenship have prevented the government not only from effecting his removal from the United States but also in determining his true identity. Given petitioner's lack of cooperation, he cannot satisfy his burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future. *See Pelich,* 359 F.3d at 1057. Indeed, "[w]e cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, 121 S. Ct. 2491, until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal." *Lema*, 341 F.3d at 856. As the Ninth Circuit found in *Pelich*, petitioner has the keys to his freedom in his pocket and could likely effectuate his removal by providing evidence of his identity. *Pelich*, 329 F.3d at 1060. Accordingly, petitioner's detention is not indefinite, and the Court must deny habeas relief.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that respondent's motion to dismiss be GRANTED, and that this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 25th day of August, 2010.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -7